FILED

JUL 06 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Anoush Hakimi (SBN 228858)
2  anoush@handslawgroup.com
3  Peter Shahriari (SBN 237074)
   peter@handslawgroup.com
4  **THE LAW OFFICE OF HAKIMI & SHAHRIARI**
   1800 Vine Street
5  Los Angeles, CA 90028
6  Telephone: (888) 635-2250
   Facsimile: (213) 402-2170
7
8  Attorneys for Plaintiff-Relator,
   **RELATOR, LLC**
9

10              **UNITED STATES DISTRICT COURT**
11              **NORTHERN DISTRICT OF CALIFORNIA**
12
                                         LB
13  UNITED STATES OF AMERICA,    Case No.   CV 22-8954
14       Plaintiff,
15  *ex rel.* **RELATOR LLC**, a California   **COMPLAINT FOR VIOLATIONS**
    limited liability company,              **OF FEDERAL FALSE CLAIMS**
16                                          **ACT**
17       Relator,
                                            **FILED *IN CAMERA* UNDER SEAL**
18       v.                                 **PURSUANT TO 31 U.S.C. §**
                                            **3730(b)(2)**
19  **WILLIAM ALLAN JONES**, an
20  individual, **CREDITCORP**, a Tennessee   **DO NOT PLACE ON PACER**
    Corporation; and DOES 1-10,
21
22       Defendants.                        **JURY TRIAL DEMANDED**
23
24
25       Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of
26
    **ALLAN JONES**, an individual, **CREDITCORP**, a Tennessee Corporation, and
27
28  DOES 1-10 (together with the corporate Defendant and the individual Defendant,

─────────────────────────────────────
                   COMPLAINT

collectively, the "Defendants"), and alleges as follows:

## I.    INTRODUCTION

1.    This is a case about fraud on the government, embezzlement, misappropriation of aid funds intended for working families, and greed during a national emergency. In this case, William Allan Jones, an individual, a businessman (through any entity he wholly owned and controlled called Creditcorp[1]) applied for and received a PPP loan for an astronomical **$10,000,000.00**, purportedly to cover payroll costs for his workers, however this loan was illegal because: 1) Creditcorp is a money **lender** and therefore **ineligible** to receive one dollar of SBA loans; 2) in calculating the loan amount Defendant claimed preposterous payroll costs of $1,600,600 *per worker* in the application which grossly exceeded the $100,000 per employee annualized payroll limits made clear by the SBA[2]; and the money was misappropriated for unauthorized purposes, not to help his workers.

2.    Even assuming the PPP loan proceeds were not simply pocketed by W. Allan Jones, his company Creditcorp was ineligible to receive SBA loans. Defendant's business type is ineligible for SBA loans because they are **money lenders**. Defendant's certification was false because **they are the type of**

---

[1] Creditcorp is doing business as "Check Into Cash", a chain store providing controversial "payday loans" loans to low income borrowers.
[2] Defendant Allen Jones is a wealthy businessman and has been called the "father of the payday loan industry" (https://en.wikipedia.org/wiki/Allan_Jones_(businessman)). He does not need this loan for himself, and did not use it to support his workers. The PPP program was intended for workers and their families, not as a windfall for a spectacularly wealthy CEO and a handful of his millionaire executives. Defendant took advantage of a government program intended for needful American workers.

**business/industry which is prohibited from SBA loans**. Creditcorp operates a chain of businesses known as "Check Into Cash", a chain store providing controversial "payday loans" to low income borrowers.

3.    They falsified their eligible business expenses on their applications. The wildly inflated payroll costs Defendants reported were vastly beyond the $100,000 salary caps, and were very unlikely to be true (as reported on tax documents). Defendants lied on their applications. Defendant ripped off a government aid program, needed by working families to survive.

4.    The money was borrowed for a business which was not allowed to take one dollar in loans, let alone ten million dollars. The $10,000,000 in embezzled funds should have been returned. Not a penny has been returned.

5.    Defendant's application also violated the $100K Salary Expense Cap (as defined below) which was confirmed in the applications. It was promised that 100% of loan proceeds would be used for salaries and the average annual salary for their reported employees, each with respect to their loans, was $1,600,000 *per year per employee*. These amounts were wildly excessive, going far beyond the glaring government instruction not to exceed the $100,000 salary cap per person.

6.    The Defendants failed to exclude costs over $100,000. Defendant included costs far in excess of $100,000, and therefore violated the $100K Salary

Expense Cap.[3]

7.      On its application, Defendant Creditcorp claims to have <u>needed</u> the loan to pay for only 30 employees a preposterous payroll cost of **$1,600,000** *per employee, per year*. It is important to note that PPP loans to pay for owner/partner draws and distributions are absolutely <u>not</u> allowed. The rules explaining what the purpose of the loan are clear: to help workers. There was no "need" or "economic necessity" to pay Jones or a few select executives lavish windfall bonuses.

8.      The corporate Defendant Creditcorp is owned and controlled by Jones, and in fact are different in name only.

9.      The Defendants did in fact receive the loan. *The Defendants have not returned a penny*.

10.     The Defendants made many material false statements to the government to obtain these large loans and did it for an impermissible purpose.

11.     Defendants communicated in writing, deceptive statements, including without limitation, with respect to the necessity of the loan proceeds, the number of employees, the calculation of the loan amount, the purpose of the loan, and the use of the proceeds, among others.

12.     Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs

---

[3] In the loan application, the instructions explicitly state that for purposes of calculating "Average Monthly Payroll," costs over $100,000 on an annualized basis for each

under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

13.    This action arises from numerous false statements and claims that the Defendant knowingly presented to the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

14.    The Defendants unlawfully obtained millions of dollars of PPP Proceeds (as defined below), and failed to return or repay the money.

15.    In summary, Jones used his company Creditcorp to obtain a very large PPP loan from the government. He deceptively completed the SBA loan application by seeking money for a business which is INELIGIBLE to receive even 1 dollar of PPP loans, because it itself is a lender. The industry in which Creditcorp belongs is expressly *prohibited* from receiving SBA loans generally and the PPP loan as well. Jones is a sophisticated businessman with multiple financial services operations, which deal with money. He is politically active and is well versed in the rules and law of the lending industry. In fact, he has made political donation and actively lobby's in the financial services area of law. He knows better than to have taken this loan. Defendant's stock in trade is money. Not only was the loan impermissible, but Defendant also used preposterously high salaries to calculate the employee must be excluded (the "$100K Salary Expense Cap.")

loan amount. This was also in violation of the bright rule not to exceed $100,000 in doing the calculation. Jones knew full well that his many false statements to the government and SBA and his activities in seeking this loan and loan forgiveness were illegal, but he was not stopped by anybody or himself.

## II.    THE PARTIES

16.    Plaintiff-Relator LLC, is a California limited liability company with its principal place of business in Los Angeles, California.

17.    Defendant William Allan Jones ("Jones") is an individual and, at all relevant times herein, is and was the sole owner and the Chief Executive Officer and director of Creditcorp.

18.    Defendant Creditcorp., is a Tennessee corporation ("Creditcorp") with its principal place of business at 201 Keith Street SW Suite 80 Cleveland, TN 37311.

19.    During round 1 of the paycheck protection program, Creditcorp applied for a PPP loan for **$10,000,000.00.** It was approved on May 2, 2020 by the SBA for the full amount, which was disbursed. The loan was facilitated by Wells Fargo Bank, National Association. Creditcorp received 100% of the approved amount. On its application for this loan, Creditcorp stated that it had only 30 employees with an average salary of $1,600,000 *per year per employee.*

## III.    The CARES Act and Paycheck Protection Program

20.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic

Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

21.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

22.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

23.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

24.    Under the PPP, in 2020, eligible businesses could obtain one SBA

COMPLAINT

guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

25.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

26.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

27.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan.

For a PPP loan to be approved, the Lender was required to Answer Yes to the

following questions in the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General

Eligibility to receive a PPP Loan:

| | | Yes | No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ | ☐ |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its

PPP loan application (SBA Form 2483), the PPP borrower's false certification

caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's

Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

9

COMPLAINT

contained the PPP borrower's False Statement.

28.    SBA Form 2483 provides the following certification, among others "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

29.    SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

30.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

31.    SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

32.    SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification.")

33.    SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

34.    SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years

and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

35.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

36.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

37.    Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

38.     13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes <u>money lenders</u> like Defendant Creditcorp…

   **"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

39.     On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at <u>https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf</u>. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

40.     With respect to the PPP, the January 6, 2021, Interim Final Rule

provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

> *"Are businesses that are generally ineligible for 7(a) loans under 13 CFR 120.110 eligible for a PPP loan?*
>
> **Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter**

41.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter states as follows:

## CHAPTER 3: INELIGIBLE BUSINESSES

### A. TYPES OF INELIGIBLE BUSINESSES

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1. Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)

2. Businesses Engaged in Lending 13 CFR § 120.110 (b).

    a. SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:

        i. Banks;

        ii. Life Insurance Companies (but not independent agents);

        iii. Finance Companies;

        iv. Factoring Companies;

        v. Investment Companies;

        vi. Bail Bond Companies; and

        vii. Other businesses whose stock in trade is money.

    b. The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

        i. A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

        ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

        iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

        iv. A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

42.    Creditcorp is a money lender. They are clearly not allowed to receive SBA loans. Creditcorp and Jones, as sophisticated Defendants, should have known this. They disregarded these clear rules.

43.    Defendant's certification was false because **they are the type of business/industry which is prohibited from SBA loans. The Defendants are money lenders**.

44.    In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

45.    Jones is a multi-millionaire who does not need a PPP loan for himself. Discovery will reveal where the $10 million in PPP funds where actually distributed, but certainly Jones did not need any financial assistance. His business was lending other people money. His "stock in trade" is money.

### IV.    Defendants' False Statements and Misuse of Proceeds

46.    Defendants applied for and received the PPP Loans in the total amount of **$10,000,000.00**. In order to receive the loan, Defendants would have to have completed SBA Form 2483 entitled "Borrower Application Form". In doing so, Defendants intentionally made materially false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity Certification, the Worker Retention and Payroll Certification, the No False Statements Certification and the Single Loan Certification.

47.    Defendants signed the loan applications, thereby endorsing the

16

COMPLAINT

Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

48.     The proceeds of the PPP Loan were not and could not have been used only for business-related purposes consistent with the Paycheck Protection Program Rule, because, among other things, the Corporate Defendants did not have the stated number of employees at the times the loans were disbursed, therefore when Defendants made the Use of Proceeds Certification, the certification was false.

49.     The proceeds of the PPP Loan were not necessary to support the ongoing operations of Corporate Defendant. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

50.     The proceeds of the PPP Loan were not used to retain workers and maintain payroll, and therefore when Defendants made the Worker Retention and Payroll Certification, the certification was false.

51.     On their loan applications, Defendants intentionally made several key statements which were false and intended to deceive. These key false statements by Defendant made it possible for them to get the loans.

52.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

## V.     THE FALSE CLAIMS ACT

53.     Plaintiff alleges that, from at least April 28, 2020 through the time of

the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused on numerous occasions Community Federal Savings Bank to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

54.     The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

55.    A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31

19

U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.    JURISDICTION & VENUE

56.    This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

57.    Plaintiff The United States of America is also located in the Northern District of California. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Northern District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[4]

58.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Northern District of California.

59.    Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing,

---

[4] "Check Into Cash" stores operate throughout California. Creditcorp transacts business in California.

COMPLAINT

audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.   FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

60.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

61.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

62.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

63.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

64.        Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages

under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 4, 2022                    THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:   /s/ Peter Shahriari
      PETER SHAHRIARI, ESQ.
      Attorney for Plaintiff